AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Daniel Andres Morones,<br>BOP Reg# 39448-048, dob 04-16-1982<br>U.S. Federal Correctional Institution<br>9595 W Quincy Ave, Littleton, CO 80123 | )<br>)<br>) Case No. 09-SW-5390-BNB<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___State and___ District of ___Colorado___ *(identify the person or describe property to be searched and give its location):* The body of Daniel Andres Morones, a federal inmate in custody at the Federal Correctional Institution, located at 9595 W Quincy Ave, Littleton, Colorado.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* The fingerprints and palm prints from the person and body of Daniel Andres Morones. For a description of items to be seized, see Attachment A, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1111___
and the application is based on these facts:
See attached Affidavit.

✓ Continued on the attached sheet.

✓ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Harry B. Deal*
Applicant's signature

Harry B. Deal, Special Agent FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: December 2, 2009

City and state: Denver, CO

*Boyd N. Boland*
Judge's signature

BOYD N. BOLAND
United States Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Harry B. Deal, Special Agent, Federal Bureau of Investigation, U.S. Department of Justice, being duly sworn, do hereby depose and state the following:

Your affiant is a Special Agent (SA) of the Federal Bureau of Investigation (FBI), U.S. Department of Justice, and has been so employed for twenty-four years. Your affiant is currently assigned to investigate Violent Crimes/Major Offenders in the Denver Division, Pueblo Resident Agency. As such, your affiant has the responsibility to investigate assaults and homicides that occur within the Federal Correctional Complex, including the Federal Correctional Facility (FCI) in Florence, Colorado. As a Special Agent, your affiant has received specialized training in the investigation of violent crimes, including homicides. Your affiant has also received specialized training in taking impressions of fingerprints and palm prints (major case prints) for use in the investigations of those offenses.

This affidavit is provided in support of a request for a search warrant for fingerprints and palm prints from the body of Daniel Andres MORONES. Morones is currently incarcerated at the Federal Correctional Facility (Englewood) located at 9595 West Quincy Avenue, Littleton, Colorado. Morones is described as a Hispanic male, date of birth, April 16, 1982, Bureau of Prisons inmate registration number 39448-048. Records of the Bureau of Prisons (BOP) reflect Morones was previously housed, on December 29, 2008, at the FCI in Florence, Colorado.

On December 29, 2008, a homicide occurred at FCI-Florence, Colorado, Pueblo B Housing Unit. Investigation has shown Inmate Pablo Zungia-Garcia, who was housed in Pueblo B Unit cell # 408 was severely beaten, and died that same day as a result of massive head trauma sustained in the beating. FCI-Florence is within the special maritime and territorial jurisdiction of the United States. Your affiant has been assigned to investigate this homicide. The United

States Attorney's Office, District of Colorado, and the Federal Bureau of Investigation, Denver Division, are investigating this incident for violations of Title 18, United States Code, sections 371, 1111, and 2. 18 U.S.C. section 113(a)(3) which makes it a crime to commit a conspiracy against the United States. 18 U.S.C. section 1111 makes it a crime to commit murder within the special maritime and territorial jurisdiction of the United States. U.S.C. section 2 makes an individual responsible for a crime and liable as a principal if that person "aids, abets, counsels commands. induces, or procures" the commission of the crime.

Since this affidavit is being prepared for the limited purpose of securing a search warrant, it is not inclusive of all facts known to your affiant concerning the investigation and contains only those facts your affiant believes are necessary to establish probable cause. The following facts are offered in support of this request:

1. On the morning of December 29, 2008, at approximately 7:50 a.m., an inmate in FCI-Florence approached Bureau of Prisons (BOP) officials at the FCI-Florence facility and informed them that an inmate in the Pueblo Unit had been assaulted and needed assistance. Pueblo Unit is located within FCI-Florence, U.S. Federal Correctional Complex and is within the special maritime and territorial jurisdiction of the United States.

2. Correctional officers conducted a search of the cells in Pueblo Unit. At approximately 8:12 a.m., they discovered the body of Inmate Pablo Zuniga-Garcia, aka Canekas. in cell # 408, Pueblo B Housing Unit, FCI-Florence. This was Zuniga-Garcia's assigned cell, along with inmate Mark Rosalez. Zuniga-Garcia appeared badly beaten and blood covered his cell. After Zuniga-Garcia's body was discovered, FCI medical staff arrived at the cell and performed emergency medical procedures. At approximately 8:28 a.m., FCI medical staff pronounced

Zuniga-Garcia dead. The body was removed from the cell and transported to FCI Health Services Trauma Room where the deceased was positvely identified as Pablo Zuniga-Garcia through dental and medical records.

3. After Zuniga-Garcia's body was removed, cell # 408 was secured and a crime scene investigation was initiated. BOP officials notified FBI Pueblo Resident Agents of the homicide and requested FBI assistance. FBI Special Agents responded to FCI-Florence. During the course of the investigation, FBI agents interviewed inmate Juan Martin Ruelas. Ruelas said he went to cell # 408 on the morning of December 29, 2008, to meet inmate Mark Rosalez for breakfast. Inmate Rosalez was the cellmate of Zuniga-Garcia. Ruelas said when he arrived at cell # 408 and opened the cell door, he observed a fight taking place in the cell. Ruelas said he closed the cell door and stood outside the cell while the fight was taking place. Ruelas stated he did not want to leave the vicinity of the cell because he wanted to see what was going on, or words to that effect. Ruelas told interviewing agents he did not notice any inmates leaving the cell, and claimed he was not involved with the death of Zuniga-Garcia. Ruelas advised agents his cellmate, Rafael Armando Alvarado, was involved in the incident.

4. On December 31, 2008, FBI agents interviewed Inmate Rafael Armando Alvarado at FCI-Florence. Inmate Alvarado admitted he participated in the attack on Pablo Zuniga-Garcia on December 29, 2008. Alvarado told interviewing agents he met with Inmate Justin "J" Hernandez and Inmate Francisco Javier Vasquez-Duran in the FCI-Florence chapel on December 28, 2008, the day before the attack. Alvarado identified Hernandez as the leader of the Surenos prison gang in Pueblo A and B Units at FCI-Florence. Alvarado admitted that both he and Vazquez-Duran are associated with the Surenos gang.

5. During this December 28, 2008 meeting, Alvarado said Hernandez ordered Alvarado and Vazquez-Duran to assault Zuniga-Garcia. Zuniga-Garcia was also affiliated with the Surenos. Alvarado said he felt obligated to follow Hernandez's order because of his affiliation with the Surenos gang.

6. Alvarado was informed by Hernandez there would be other participants in the attack, but he did not learn their identities until shortly before the incident. occurred on December 29, 2008. On the morning of December 29, 2008, Alvarado and Vazquez-Duran were met on the upper deck of the Pueblo B Unit by two other inmates - Daniel Andres Morones, and an inmate known to Alvarado as "Diablo". Alvarado knew that Morones and "Diablo" lived in the Pueblo A Unit, which is attached to Pueblo B Unit. Through photographs, Alvarado identified "Diablo" as Inmate Jose Augustin Pluma. Alvarado said Morones and Pluma were also members of the Surenos prison gang.

7. Alvarado said he, Vazquez-Duran, Morones, and Pluma met briefly on the upper deck of Pueblo B Unit on the morning of December 29, 2008, and then walked down to cell # 408, where Zuniga-Garcia resided. Each inmate was armed with a makeshift dangerous weapon - a padlock attached to a web belt. The padlock/belt device was to be used by each inmate to strike Zuniga-Garcia.

8. Alvarado said that Morones entered cell # 408 first, followed closely by the others. As they entered the cell, Alvarado saw Zuniga-Garcia seated on the toilet seat next to the cell door. He appeared to be using the toilet as a seat. Morones struck Zuniga-Garcia in the head with a padlock. Zuniga-Garcia appeared to be briefly stunned, but then began to fight the four attackers. Alvarado said during the fight, his lock broke off the belt. Alvarado tackled Zuniga-Garcia

subdued him against the back wall of the cell. Alvarado held Zuniga- Garcia while the other attackers repeatedly struck Zuniga-Garcia with their padlocks. Alvarado was also struck by the locks being swung by his fellow attackers as they were hitting Zuniga-Garcia.

9. Alvarado told the agents he saw his roommate, Inmate Juan Ruelas, open the cell door and look inside at various points during the attack. Alvarado advised interviewing agents that Ruelas was acting as a "lookout".

10. Alvarado said at some point during the assault, he felt that Zuniga-Garcia had received enough punishment. Alvarado said he and Vazquez-Duran got off Zuniga-Garcia and left cell # 408. Alvarado said Morones and Pluma stayed behind and continued to beat Zuniga-Garcia with weapons, as well as their hands and feet. As Alvarado and Vazquez-Duran were leaving the cell, Alvarado said he observed Morones pick up a mop handle and begin poking Zuniga-Garcia in the head and neck area with the mop handle. Alvarado said when he and Vazquez-Duran left the cell, Zuniga-Garcia was badly beaten, but still breathing and alive. Both Morones and Pluma remained in the cell afer Alvarado and Vazquez-Duran left the cell. Alvarado told interviewing agents he did not intend for Zuniga-Garcia to die and believed they were only supposed to assault him.

11. FBI agents obtained video surveillance footage taken by cameras in FCI Pueblo B Unit on December 29, 2008. The video footage shows persons who appear to be Inmates Alvarado, Vazquez-Duran, Pluma, and Morones enter cell # 408 a few minutes after 6:00 a.m. on the morning of December 29, 2008. The video shows persons who appear to be Alvarado and Vazquez-Duran exit the cell approximately 12-13 minutes later. Approximately 3-4 minutes later, persons who appear to be Morones and Pluma are seen on the video leaving cell # 408.

The video surveillance footage has been retained as evidence. No other persons appear to enter or exit the cell until the body is found by BOP personnel later that morning.

12. On January 6, 2009, the State of Colorado Department of Public Health and Environment, issued a Certificate of Death of Pablo Zuniga-Garcia. Your affiant has obtained a copy of this Certificate. The date of death was listed as December 29, 2008. The place of death was identified as the Federal Correctional Institution, located in Florence, county of Fremont, state of Colorado. The immediate cause of death was listed as "major Head Trauma" due to, or as a consequence of "Assault".

13. After the body was discovered by BOP personnel, cell # 408 was secured and processed for potential physical evidence. Pueblo Units A & B were also searched and items of evidentiary value were recovered. Among the items found in the cell and Pueblo units were khaki-colored inmate clothing, which appeared to be blood stained; prison issued jackets and boots with possible blood stains; cotton web belts and padlocks with possible blood stains, a broken mop handle with what appears to be blood stains on it; towels, and other clothing items that all appeared to have possible blood stains on them. These evidentiary items recovered at the crime scene were subsequently submitted to the Colorado Bureau of Investigations Crime Laboratory, Pueblo, Colorado for examination and analysis.

14. On October 7, 2009, a superseding indictment was filed in the United States District Court for the District of Colorado charging Daniel Andres Morones and Jose Augustin Pluma and others with the December 29, 2008 murder of Pablo Zuniga-Garcia (see criminal case number 09-cr-00301-JLK).

15. Colorado Bureau of Investigations (CBI) Crime Lab Fingerprint Examiner Clinton

Thomason has notified your affiant that during his laboratory examination of the submitted evidence, a "partial bloody print" was discovered on the mop handle that was recovered from cell # 408 during the processing of the crime scene there on December 29, 2008 (as noted in paragraph # 14 of this affidavit). Thomason has indicated the partial bloody print appears to be a partial palm print.

16. Based upon my training and experience, I am aware that a fingerprint is an impression of the friction ridges from all parts of the human finger. A palm print is an impression of the friction ridges from all parts of the palm of a hand. A friction ridge is a raised portion of the epidermis of a person's skin on the palmar (palm) or digits (fingers and toes) or plantar (sole) skin, consisting of one or more connected ridge units of friction ridge skin. Human fingerprints or palm prints may be deposited on objects by natural secretions from glands in the body which are present in friction ridge skin (secretions consisting primarily of water) or they may be made by ink or other contaminants transferred from the peaks of friction skin ridges to a relatively smooth surface such as a fingerprint card. Fingerprints and palm prints are unique to an individual. An unknown fingerprint or palm print deposited on a surface by an unknown person can be identified as being deposited by one particular person through comparison of the unknown deposited print to known prints obtained from an individual and placed onto a fingerprint or palm print "card."

17. Affiant is aware the CBI Crime Laboratory is capable of analyzing fingerprint and palm print evidence submitted as evidence. Obtaining known samples of major case fingerprints, to include palm prints, and submitting these known samples to CBI is necessary for CBI to determine the origin of the partial palm print evidence discovered by CBI Fingerprint

Examiner Clinton Thomason on the mop handle found at the scene of the homicide, and submitted for analysis by the FBI.

18. Based on information described above, information obtained during this investigation, and my training and experience, your affiant submits there is probable cause to believe there is evidence on the person of Daniel Andres Morones, namely fingerprints and palm prints, relevant and necessary to prove the crime of Murder within the special maritime and territorial jurisdiction of the United States, in violation of Title 18, United States Code, section 1111.

19. Affiant requests a Search Warrant be issued to allow your affiant, other FBI Special Agents, and/or Bureau of Prisons Staff, to search the person of Daniel Andres Morones and obtain impressions of his fingerprints and palm prints.  FBI Special Agents and Bureau of Prisons staff must be authorized to use reasonable force, if necessary, to collect these impressions, should the inmate physically resist the execution of this warrant.

Affiant states the foregoing information is true and correct to the best of my knowledge

_____
HARRY B. DEAL
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to me in my presence this 2nd day of December, 2009.

_____
United States Magistrate Judge
United States District Court
District of Colorado

8